**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUSSELL HERNANDEZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>                                                    / | No. 2:13-CV-2629-TLN-CMK<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 29, 2010.  In the application, plaintiff claims that disability began on May 17, 2007.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 9, 2012, before Administrative Law Judge ("ALJ") Jean R. Kerins.  In a June 14, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): lumbar spinal stenosis with claudication; asthma; and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work, except he is limited to occasionally climbing ramps/stairs, ladders/ropes/scaffolds; occasionally stooping; and occasionally crawling; he must periodically alternate sitting and standing every hour for two to five minutes; he should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on October 28, 2013, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to develop the record; (2) the ALJ's residual functional capacity assessment is "unsupported by facts and rationale"; and (3) the ALJ's adverse credibility finding "rests firmly on [the ALJ's] erroneous RFC finding."

**A.    Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues that the ALJ failed to develop the record in light of ambiguous evidence. According to plaintiff, the evidence is ambiguous because examining physician Dr. Martin ". . .expressed concerns there was a greater level of disability than the evidence before the expert supported." Plaintiff points to Dr. Martin's statement that, despite finding no medically determinable functional restrictions, plaintiff "may have problems maintaining regular employment." Plaintiff states: "Rather than recognizing that Dr. Martin created an ambiguity about disability triggering a duty to develop the record, the decision concocted its own capacity so that Mr. Hernandez would just miss being disabled."

Regarding Dr. Martin, the ALJ stated:

> James Martin, M.D., saw the claimant for a consultative internal medicine evaluation on March 5, 2011. The claimant's chief complaints were high blood pressure and asthma. The claimant reported being treated for high blood pressure for a decade. The condition may have existed previously. The claimant took his medications regularly and did not report any deleterious side effects or related end-organ damage (no heart attack, strokes, angina, kidney failure, or eye complications) fortunately. The claimant reported a life-long history of asthma. At this evaluation, the claimant noted related symptoms infrequently, mostly during spring and summer. Inhalers used regularly at those times but otherwise on a PRN basis. In fact, for three to five years there were few symptoms. In the past, emergency room attention was required. Nebulizers were used at times but not very often of late.
>
> Dr. Martin reviewed old radiograph reports and found them unremarkable. Examination, at first view, the claimant looked to be obese and appeared somewhat younger than the stated age. His grooming was casual. The claimant appeared generally euthymic. He spoke in full sentences but was a bit short of breath with movement. He had no florid difficulty getting on/off the exam table or moving in the site appreciated. Cane was noted and was mostly used for going from a seated to standing position. His chest and lungs were clear and normal; he had normal range of motion and normal gait. He received a diagnostic assessment of obesity/deconditioned state, hypertension without objective evidence of associated end-organ damage, asthma, mild by history and examination, and chronic musculoskeletal pain of unclear etiology or significance. Dr. Martin found no limitations and noted claimant would likely benefit from working in

workspace devoid of asthma provoking agents (Exhibit 7F).

After outlining her residual functional capacity assessment, the ALJ added:

> In reaching the determination to the claimant's residual functional capacity, the undersigned accorded significant weight to the findings of the consultative examiner, Dr. Martin. However, giving claimant the benefit of the doubt and taking into considerations claimant's musculoskeletal back symptoms, the Administrative Law Judge did not find that Dr. Martin gave any swaying to his back symptoms and thus limited the claimant to a range of light exertion work. . . .

Finally, the ALJ again noted that Dr. Martin found the "old radiograph reports" unremarkable.

Upon careful review of Dr. Martin's report, the court finds no ambiguity. In his report, Dr. Martin states: "[B]ased on the largely unremarkable objective findings and available information at the time of this examination, I am forced to say I find no functional restrictions attributable to medical conditions for age- and habitus-appropriate activities." The doctor specifically opined that plaintiff could work in a "work space devoid of known asthma-provoking agents." Thus, Dr. Martin is clear in his opinion that plaintiff can work.

While Dr. Martin also stated that he would "imagine this claimant may have problems maintaining regular employment based on the comments," this statement does not introduce ambiguity to the doctor's opinion that, based on the objective evidence, plaintiff can work. Initially, the court notes that Dr. Martin was equivocal by stating that plaintiff "may" have difficulties. Additionally, given that the doctor did not note any objective findings of functional restrictions, the "comments" forming the basis of Dr. Martin's equivocal statement must refer to plaintiff's subjective complaints. It is unambiguous that Dr. Martin opined that plaintiff has no functional limitations which are supported by objective findings.

### B. Residual Functional Capacity Assessment

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's

exertional capabilities in light of his or her limitations.[1]

In this case, the ALJ stated as follows regarding plaintiff's residual functional capacity:

> Given the foregoing evidence, the undersigned finds that the claimant's impairments have resulted in some restrictions in his functional abilities. However, based on the medical evidence and the testimony presented at the hearing, the undersigned concludes that the claimant is capable of performing the full range of light work except claimant is limited to occasionally climbing of ropes/stairs, ladders/rope/scaffolds; he would need a sit/stand option every hour at least two to five minutes. He is limited to occasional stooping. He should avoid concentrated exposure to hazards such as fumes, odors, dusts gases, and poor ventilation. These limitations and restrictions have been provided to accommodate the claimant's symptoms and reduced functioning in these areas.

The ALJ then discussed Dr. Martin's opinion and added:

> . . .While the Administrative Law Judge accepted the determination of the state agency physicians who acknowledged findings of asthma, hypertension, obesity, and degenerative disc disease of the lumbar spine, the record shows scant medical treatment for his complaints of alleged disabling impairments. The claimant also alleged problems with bilateral hips, left foot, right ankle pain, arthritis, and blurred vision.
>
> Nevertheless, radiological studies of his left foot and hips showed no abnormalities only some mild degenerative changes present at the 1st MP joint. The right ankle showed evidence of soft tissue edema but no acute bony abnormality and only a small plantar spur (Exhibit 3F). Further, imaging studies of his left elbow, left hand, and left wrist revealed no significant findings.

///

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

> He suffers from moderately severe low back pain, at times and does have claudication of the lower extremities, however, accommodations have been made to his residual functional capacity to accommodate limitations. His range of motion is within normal limits, and he is able to move about and there has been no invasive treatment for any chronic body pain. Although there are reports of cane usage, he uses it because he is obese and deconditioned and found it helpful for going from seated to standing position. Moreover, Dr. Martin reviewed old radiograph reports and found them unremarkable (Exhibit 3F, 7F). Thus, the medical evidence documents only scant and conservative medical treatment for complaints of lower back pain which would not interfere with an []ability to perform light work. He reported having blurred vision but eye examination was normal (Exhibit 4F, 5F). He has a history of hypertension controlled with medication, which he takes regularly and he did not report any deleterious side effects or any related end-organ damage. He has a life long history of asthma, but claimant reported symptoms are infrequent, in fact, for three to five years he had few symptoms. In addition, chest examinations were normal, however claimant would likely benefit from working in jobs where there [are no] asthma-provoking agents.
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence. Furthermore, despite some slight opinion variation, no examining or non-examining physician has suggested that the claimant is precluded from performing light work with appropriate exertional limitations.

According to plaintiff, the ALJ's rationale ". . .is sufficiently inadequate that its RFC should be rejected and the decision reversed for this independent reason." Plaintiff appears to suggest that the ALJ failed to consider the opinion of treating physician, Dr. Manis of Primary Care Center, who, according to plaintiff, indicated "*disabling* limitations even *before* the spinal-stenosis-with-claudication diagnosis. . . ." (emphasis in plaintiff's brief).

As to Dr. Manis and records from Primary Care Center, the ALJ stated:

> Medical records from R. Manis, M.D., at Sacramento Primary Care Center in March 2008 show claimant presenting with complaints of back pain. He reported that he slept on a friend's couch and his back popped out. He was assessed with lower back pain and prescribed Flexeril and Vicodin. In January 2009, there were complaints if dizziness, also a history of asthma and hypertension. In April 2009, claimant reported neck pain, stable hypertension, and continued low back pain (Exhibit 1F).
>
> * * *
>
> . . .[P]rogress note in March 2012 reflect claimant discussing with Dr. Manis at Sacramento Primary Care his complaints of increased back pain with returning to work loading appliances. He received a prescription for

> pain medication.
>
> In April 2012, claimant showed at Primary Care Clinic for follow-up of low back pain. He reported stiffness, numbness, weakness with pain in back radiating down into his lower extremities. He was offered a diagnostic impression of lumbar spinal stenosis with claudication. Care was conservative in nature and no aggressive measures were required (Exhibit 16F).

The court rejects plaintiff's argument that the ALJ failed to properly consider Dr. Manis' opinion for the simple reason that the doctor never rendered any opinion as to plaintiff's functional capabilities. Moreover, as the ALJ noted, the records from Primary Care Center consistently show only conservative treatment with pain medication.

### C. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

///

///

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the  ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

> As to plaintiff's credibility, the ALJ stated:
>
> The claimant alleged that he was limited in his ability to perform work due [to] degenerative arthritis, lower back, bilateral hips, right ankle pain, and blurred vision in the right eye (Exhibit 2E).
>
> The claimant in essence testified as follows: The claimant is a 49-year-old man who has past work as an electrical/maintenance repairperson. Educationally, he has a GED and has multiple certificates of completion of courses in various constructions areas.  He reported that he last worked in 2009.  He testified that he stopped working due to pain in back, ankles, hips, and feet.
>
> He contends his ankles swell, as well as his feet.  His arms and legs go numb.  It hurts to sit because of pain in his hips.  He has tremors in his hands and problems with his shoulders.  In addition, the claimant is 5'4" and weighs 264 pounds, which is considered to be in the morbidly obese range.  He can handle his personal care.  However, he is unable to stand/walk, or sit for any prolonged period.  He has problems bending.  He cannot carry a gallon of milk.
>
> The claimant's testimony cannot be accepted as entirely credible because he alleges that he could minimally stand, walk, lift, and carry.  His allegations are not supported by objective clinical findings.  Moreover, objective medical findings support that the claimant is capable of a range of light work.

1  According to plaintiff, ". . .the decision's essential point, that Mr. Hernandez couldn't be credited
2  because his allegations about his residual functional capacity were out of step with the decision's
3  RFC, cannot itself be credited because the decision's RFC. . . did not comprehend the treating
4  source objective evidence associated with the stenosis-with-claudication diagnosis."
5             This argument lacks merit because, as discussed above, the treating source
6  physician never rendered any opinion as to functional capacity.   As the ALJ noted, the various
7  opinions rendered regarding plaintiff's functional capacity support the finding that plaintiff can
8  perform light work with certain restrictions.   Notably, Dr. Martin performed an examination and
9  opined that plaintiff could perform work activities.   The court finds that the ALJ did not err in
10 rejecting plaintiff's statements as to the severity of his symptoms.
11 / / /
12 / / /
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

        1.     Plaintiff's motion for summary judgment (Doc. 13) be denied;

        2.     Defendant's cross-motion for summary judgment (Doc. 17) be granted; and

        3.     The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 19, 2015

                                                                     */s/ Craig M. Kellison*
                                                                     **CRAIG M. KELLISON**
                                                                     UNITED STATES MAGISTRATE JUDGE